**Dated: April 4, 2019**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-13888-JDL |
| Oklahoma Automatic Door, Co., Inc. ) | Chapter 7 |
| ) | |
| Debtor. ) | |

### ORDER GRANTING MOTION FOR 2004 EXAMINATION

### I. Introduction

This matter comes on for hearing upon the *Amended Opposed Motion For Rule 2004 Examination* filed by Republic Bank & Trust (the "Bank") (the "Motion") [Doc. 27], the *Objection To Republic Bank & Trust Opposed Motion for Rule 2004 Examination* filed by Debtor, Oklahoma Automatic Door, Co., Inc. ("Debtor") [Doc. 29] and *Republic Bank & Trust's Reply to Oklahoma Automatic Door Co., Inc.'s Objection to Opposed Motion for Rule 2004 Examination* [Doc. 31]. The Bank appearing by and through its counsel, Michael D. Gray and the Debtor appearing by and through its counsel, Seth A. Day and O. Clifton Gooding. The Motion seeks an order from the Court compelling the Debtor by and through its sole stockholder and President, Matthew Tye Parker ("Parker"), to submit to a

Fed.R.Bankr.P. 2004[1] examination. In short, the Debtor opposes the Motion on the basis of the "Pending Proceeding Rule" i.e., that since the Bank has a pending state court lawsuit against Parker, discovery involving him should be conducted under applicable state law and not via a Rule 2004 examination. Upon review of the pleadings and hearing the arguments of counsel, the Court finds the Motion should be sustained as modified by Bank's counsel on the record. Pursuant to Rules 7052 and 9014, the below Findings of Fact and Conclusions of Law establish the basis of this Court's decision in addition to the statements made by the Court on the record which are incorporated herein by reference.

## II. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and LCvR 81.4 of the Local Rules for the United States District Court for the Western District of Oklahoma referring all bankruptcy matters to this Bankruptcy Court. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

## III. Background

Debtor filed its Petition for Relief under Chapter 7 on September 14, 2018. Parker, as President of Debtor, executed the Petition, Schedules and Statement of Financial Affairs. Debtor's Schedules indicate that the Bank is by far the Debtor's largest creditor, with Debtor listing the Bank as having three Promissory Note obligations in the amounts of $353,793, $999,874 and $102,812.13. The obligations to the Bank were secured by a real estate Mortgage and a Commercial Security Agreement containing a cross-

---

[1] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

2

collateralization provision granting the Bank a security interest in the Debtor's parts, supplies, accounts, general intangibles and all products and proceeds thereof.

The Bank thereafter moved the Court to modify and lift the automatic stay imposed by 11 U.S.C. § 362(a).[2]  On November 5, 2018, the Court entered an *Agreed Order Granting Motion To Abandon Property and For Relief From The Automatic Stay* permitting the Bank to pursue collection procedures. [Doc. 14].  On January 4, 2019, the Bank filed suit against the Debtor and others in the District Court of Oklahoma County.[3]  On January 28, 2019, the Bank filed its Amended Petition naming Parker as an additional defendant and asserting against him causes of action for breach of contract on his personal guaranty of the Debtor's obligations, fraud, conversion and unjust enrichment seeking actual damages in the amount of $1,043,618, together with interest, costs and attorney's fees.

The Bank's Motion seeks an order compelling Parker to appear as a representative of the Debtor for a 2004 examination and to produce Debtor's profit and loss statements, bank statements, general ledgers, balance sheets, inventories, income statements,

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3] *Republic Bank & Trust, Plaintiff v. Oklahoma Automatic Door Co., Inc., et al.*, In The District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2019-58.

This Court is entitled to take judicial notice of both its own docket sheets and other state or federal court docket sheets.  *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).

accounts receivable, accounts payable and records concerning the payments to vendors, all covering the period of January 1, 2017 to the present[4]. The stated purpose of the requested examination is to inquire as to "the acts, conduct, property and to the liabilities and financial condition of the Debtor, due to significant misrepresentations identified in the Debtor's Schedules". [Doc. 31, ¶1]. The Debtor opposes the Bank's efforts for a 2004 examination of Parker asserting that the same issues about which the Bank wishes to interrogate Parker are the same as asserted by the Bank in the state court action, and the 2004 examination is an impermissible "end run" around the discovery protections afforded a deponent under state and federal procedural law.  The Debtor does not assert that the discovery sought is inappropriate or beyond the scope of Rule 2004, but rather argues that discovery under Rule 2004 is precluded by the existence of the pending state court litigation in which such discovery could be obtained.

## IV. Discussion

Rule 2004(b) of the Federal Rules of Bankruptcy Procedure provides that the court may order the examination of any entity relating "only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Because Rule 2004(a) provides that the court *may* order the examination of any entity, its plain meaning grants the bankruptcy court's complete discretion in determining whether a Rule 2004 examination is appropriate. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D. N.Y. 2002); *In re French*, 145 B.R. 991, 993 (Bankr. D. S.D. 1992).  While the scope of a Rule 2004

---

[4] The date of the requested materials was orally modified at the hearing to commence January 1, 2016 to present.

examination is "unfettered and broad" and properly described as allowing a "fishing expedition," *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D. N.Y. 1996); *In re Washington Mutual, Inc.*, 408 B.R. 45, 49-50 (Bankr. D. Del. 2009), "the availability of Rule 2004 is not unlimited." *Enron*, 281 B.R. at 840 (quoting *Intercontinental Enterprises, Inc. v. Keller (In re Blinder, Robinson & Co.*, Inc.), 127 B.R. 267, 274 (D.Colo. 1991)).

One recognized limitation on the broad scope of Rule 2004 is the "pending proceeding rule," pursuant to which courts may preclude discovery under Rule 2004 based on the "existence of other pending litigation in which such discovery could be obtained." *In re International Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002); *Bennett Funding*, 203 B.R. at 28-29; *Enron*, 281 B.R. at 840 ("under the well-recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be under the Federal Rules of Civil Procedure and not by Rule 2004"); *In re Kearney,* 590 B.R. 913, 924 (Bankr. D. N.M. 2018). The pending proceeding rule is typically invoked once an adversary proceeding or contested matter has been commenced in a bankruptcy case, especially if the discovery sought through Rule 2004 goes "squarely to issues" involved in the pending litigation, in which case "application of the formal discovery rules is appropriate." *In re Job P. Wyatt & Sons' Co.,* 2011 WL 5909534 (Bankr. E.D. N.C. 2011).

The pending proceeding rule also applies in litigation outside of bankruptcy court. A Rule 2004 examination may be inappropriate "where the party requesting the Rule 2004 examination could benefit the pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." *Enron*, 281 B.R. at 842; *Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995)

5

(characterizing the use of Rule 2004 to further a state court action as an abuse of Rule 2004 and stating that the bankruptcy court did not abuse its discretion by denying production under a subpoena issued under Rule 2004, where appellant's primary motivation was to use those materials in a state court action against the examinee).

The primary reason supporting restricting the use of a Rule 2004 examination under the pending proceeding rule is that a Rule 2004 examination does not provide the examinee the same procedural safeguards as he would have in discovery under either Rule 7026 or in state court under Title 12 O.S. § 3226. For example, under Rule 2004: "the witness has no right to be represented by counsel except at the discretion of the court; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand." *In re Dinubilo*, 177 B.R. 932, 939-40 (E.D. Cal. 1993) (contrasting the substantive differences between Rule 2004 examinations and discovery under the Federal Rules).

The pending proceeding prohibition of 2004 examinations, in litigation originating in different forums, is itself subject to exceptions. "Discovery of evidence *related* to the pending proceeding must be accomplished in accord with the more restrictive provisions of [the Federal Rules of Bankruptcy Procedure], while *unrelated* discovery should not be subject to those rules simply because there is a adversary (or other action in another forum) pending." *Washington Mutual, Inc.*, 408 B.R. at 51 (citing *Bennett Funding*, 203 B.R. at 29 (emphasis in original)). Therefore, a relevant inquiry, when a party requests a Rule 2004 examination and there is litigation in another forum is whether the Rule 2004 examination will lead to the discovery of evidence related or unrelated, to the pending proceeding. *Id*. The difficult and relevant question is whether the Bank's primary purpose

6

in the Rule 2004 examination/production is to further the administration of the bankruptcy case or to aid its pending state court litigation against Parker.

There is little doubt in the Court's mind that much of the subject matter of a 2004 examination would be the same as a deposition of Parker taken in the state court litigation. In its Motion, the Bank asserts that the "proposed examination is necessary due to the discrepancies and information provided to Republic and the current Schedules to determine whether Debtor has improperly dissipated assets, failed to list all assets belonging to the Bankruptcy Estate, or committed fraud on the Bankruptcy Court or upon its Creditor, Republic." [Doc. 25, pg. 3, ¶ 4]. The Bank's Amended Petition in state court alleges, in part:

> 106. On September 14, 2018, Parker prepared Schedule A/B ("Schedules") to the Company's Bankruptcy Petition and caused the Schedules to be filed in the Bankruptcy Action.
>
> 107. In support of the Schedules, Parker prepared the Oklahoma Automatic Door, Inc. Inventory List (the "Company Inventory List"), the Oklahoma Automatic Door, Inc. Stock and Discounted Inventory (the "Company Stock List"), and the Oklahoma Automatic Door, Inc. Accounts Receivable (the "Company A/R List") and caused each to be filed in the Bankruptcy Action.).
>
> 108. Upon information and belief, the Schedules, the Company Inventory List, the Company Stock List, and the Company A/R List contain false, inaccurate and/or misleading information.
>
> ****
>
> 114. To the extent the Company collected the receivables identified in the Certificates, A/R Ledgers, the Schedules, or the Company at A/R List, Parker caused the collected receivables ("Receivables Proceeds") to be used by the Company or by him individually in a manner contrary to the terms, conditions, and covenants of Note 2 and Security Agreement 1.
>
> ****

>116. Parker's intentional actions constitute fraud, tortuous conduct for which Parker is individually liable.

Aside from the facts as alleged in the state court proceeding, it appears to the Court that the Bank's request for a 2004 examination may well be a pretext for discovery in the action against Parker in state court. This is a corporate Chapter 7 in which there can be no discharge to which the Bank could seek to bar as a result of the Debtor's wrongdoing committed by Parker as its principal. Furthermore, the automatic stay against the Debtor was lifted, and Parker is not in bankruptcy, so there is no stay as against him. The Bank is therefore free to pursue litigation against both the Debtor and Parker unimpeded by, and without resort to, the Bankruptcy Court. At first blush it appears that there is little that a 2004 examination could do to further the administration of the bankruptcy case.

However, while there are several reasons that the pending proceeding rule may bar the Bank from conducting the 2004 examination, there is one important reason which is outcome determinative. Parker is the sole stockholder, operating officer and President of the Debtor. He is the one responsible for all of the information contained in the bankruptcy filings. He is certainly the person with the most knowledge of the financial condition of the Debtor. It must be remembered that the Bank is seeking an examination of the *Debtor* by and through Parker as it's corporate representative, not Parker as an individual. This is not just a distinction without a difference. To bar the examination would mean that the Court is holding that the major creditor of a corporation is not allowed to examine the corporate debtor by and through the person most knowledgeable of the corporation's financial condition simply because he is subject to state court litigation. In effect, such a holding would be that a creditor has no right to conduct a 2004 examination of the *debtor*. A

8

creditor's fundamental right to conduct a 2004 examination of the debtor cannot be trumped by any collateral inconvenience to the debtor's corporate representative. This Court cannot find any authority for it to do so, and doubts whether there is any authority to that effect. The Court will therefore exercise its discretion and permit the Bank to conduct the 2004 examination of the Debtor by the testimony of Parker. Accordingly,

      **IT IS THEREFORE ORDERED** that Republic Bank & Trust's *Amended Opposed Motion for Rule 2004 Examination* [Doc. 27] by and through its corporate representative, Matthew Tye Parker, be and the same is hereby **Granted** as orally modified to request the production of records to be produced for the 2004 examination from January 1, 2016 to present. If the parties cannot agree upon a time and place for such examination the Court will do so upon being so advised.

# # #